IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

JUN 1 2 2002

Michael N. Milby
Clerk of Court

LUIS JAVIER RANGEL,                    )
                                       )
            Petitioner,                )
                                       )        Case No.: 02-CV-10
v.                                     )        Formerly: 00-CR-317-1
                                       )
UNITED STATES OF AMERICA,              )
                                       )
            Respondent.                )
                                       )

---

**MOTION TO SUPPLEMENT PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 UNITED STATES CODE SECTION 2255**

---

COMES NOW, the Petitioner herein, LUIS RANGEL, through the undersigned counsel, who moves this Honorable Court to allow Petitioner to supplement his pending motion to vacate the conviction and sentence heretofore imposed, based upon the ineffective assistance of counsel he received at the trial and appellate stages. In support hereof, the Petitioner states the following:

1.  On August 1, 2000, Mr. Rangel was named in a two-count indictment. (Indictment) Mr. Rangel was charged with Count One, knowingly and intentionally conspiring to possess with intent to distribute a quantity of less than 500 grams of cocaine and possession of same, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), and Count Two, knowingly and intentionally possessing with intent to distribute a quantity less than 500 grams, that is, approximately 297.7 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2. (Indictment)

2.    On August 11, 2000, Mr. Rangel pleaded not guilty to both counts. However, based on the advice of counsel, on October 5, 2000, Mr. Rangel changed his plea to guilty on count two pursuant to a written plea agreement. (Re-arraignment Proceedings)

3.    In the plea agreement, Mr. Rangel agreed to plead guilty to possession with intent to distribute a quantity less than 500 grams of cocaine, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(C). (Plea Agreement at 1) The Government agreed to recommend that the Petitioner be given credit for acceptance of responsibility and be sentenced to the low end of the Guidelines level. (Plea Agreement at 1)

4.    The court accepted Mr. Rangel's plea agreement and determined him to be guilty of count two, possession with intent to distribute a quantity less than 500 grams, that is, approximately 297.7 grams of cocaine. (Re-Arraignment Proceedings at 33)

5.    At the interview by the Probation Officer for the Pre-sentence Investigation Report, Mr. Rangel truthfully revealed to the probation officer that he had been involved in two previous transactions. (Sent. Trans. at 2) Mr. Rangel purchased cocaine for his own use. (Sent. Trans. at 2) The Probation Officer included these additional transactions as relevant conduct to bring the total drug amount to 595.4 grams of cocaine and a base offense level of 26. (PSI at ¶ 16, 60) If the relevant conduct was determined immaterial, however, the total drug amount would be 297.7 grams of cocaine and the base offense level would be 20. (PSI at ¶ 60) After subtracting three levels for acceptance of responsibility, the PSI determined the total offense level, when including relevant conduct, at 23, or when excluding relevant conduct, at 17. (PSI at ¶ 16, 60) The criminal history category was II. (PSI at ¶ 32) With this criminal history category, the sentencing range for an offense level

2

of 23 is 51 to 63 months. (U.S.S.G. Sentencing Table) For an offense level of 17 the sentencing range is 27 to 33 months. (U.S.S.G. Sentencing Table)

6.    At the sentencing hearing, the defense objected to the relevant conduct. (Sent. Trans. at 2) The court overruled the objection. (Sent. Trans. at 6)

7.    At the sentencing hearing on January 16, 2001, the court adopted the PSI and used the level 23 for a range of 51 to 63 months. (Sent. Trans. at 7) Mr. Rangel was sentenced to the high end of the range--63 months imprisonment. (Sent. Trans. at 6) He also received 3 years supervised release and participation in drug rehabilitation program. (Sent. Trans. at 6)

8.    Although the plea agreement stated that Mr. Rangel waived his right to appeal the sentence if such sentence was within the Guidelines (Plea Agreement at 4), the court never informed Mr. Rangel that the plea agreement waived his right to appeal or the consequences of the waiver. (Plea Hearing) Furthermore, at sentencing, the court expressly informed Mr. Rangel that he had the right to appeal the sentence. (Sent. Trans. at 7)

9.    Although the Petitioner desired to appeal his sentence, no appeal was ever perfected by counsel.

10.    Subsequently, Mr. Rangel, *pro se*, filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (*Pro Se*, § 2255 Motion)

11.    On April 23, 2002, this Court issued a Notice of Dismissal for Lack of Prosecution. The Court informed Mr. Rangel that he had failed to submit an application to proceed in forma

pauperis.  The Notice stated that if the Petitioner did not respond by May 24, 2002 that

the case would be placed on the dismissal docket.  (Notice)

12.    According to the docket, as of the date of this motion, Mr. Rangel's motion has not been

dismissed.

13.    Mr. Rangel's family has now hired counsel to represent Mr. Rangel in his pursuit of post-

conviction relief pursuant to § 2255.

WHEREFORE, in consideration of the foregoing, as well as the arguments of law

contained in the attached Memorandum of Law, the Petitioner respectfully prays that this Court:

1)    Allow the Petitioner to supplement, not to supplant, his pending § 2255 motion with

the instant motion and memorandum of law and the assistance of legal counsel.

2)    Issue an Order vacating the conviction and/or sentence heretofore imposed in the

instant case, based upon the violations of Petitioner's constitutional protections.

3)    At minimum Petitioner requests that this Court vacate the sentence and conviction so

that Petitioner's appellate rights may be re-instated due to ineffective assistance of

counsel in failing to pursue an appeal.

Respectfully submitted,

ROBINSON & BRANDT, PSC

By:    MATTHEW M. ROBINSON
Attorney for Appellant
11331 Grooms Road, Suite 3000
Cincinnati, Ohio 45242
(513) 381-8033

4

**VERIFICATION**

I, Luis Javier Rangel, being first duly sworn, verify that the facts stated in the foregoing motion and accompanying memorandum of law are true to the best of my knowledge and belief.

(To be Supplemented) MMR

Luis Javier Rangel

## MEMORANDUM OF LAW IN SUPPORT OF
## SUCCESSIVE APPLICATION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255

### STATEMENT OF ISSUES UNDER CONSIDERATION

Petitioner respectfully requests that this Court order that this matter proceed in the district court for adjudication of the following issues of law:

I.    The Petitioner has not waived his right to collaterally attack his conviction and sentence as he did not knowingly and intelligently enter into the appellate waiver.

II    The Petitioner received ineffective assistance of counsel when his attorney failed to perfect an appeal when meritorious issues where present and the sentencing court informed the Petitioner that actually did have a right to appeal.

### ARGUMENT

**I.    The Petitioner has not waived his right to collaterally attack his conviction and sentence as he did not knowingly and intelligently enter into the appellate waiver.**

The Petitioner submits that he did not waive his right to collaterally attack his conviction and sentence because he did not knowingly and intelligently enter into a plea agreement, thus rendering any waiver of appeals invalid.

The Government will likely argue that the Petitioner waived his rights to attack his sentence and conviction as evidenced by language in the plea agreement. However, this does not conclusively establish that the Petitioner entered into the appeal waiver knowingly and intelligently. Furthermore, at sentencing, the court clearly stated that the Petitioner had a right to appeal. (Sent. Trans. at 7) The

2

Government never objected to this statement by the court. The Petitioner was informed by the district court, subsequent to his guilty plea, that he had the right to appeal his sentence. Thus, the Petitioner did not waive his right to appeal.

Even if this court finds that the appellate waiver was voluntary, the courts have emphasized that a defendant retains the right to raise a claim of ineffective assistance of counsel and a claim challenging the voluntariness of the guilty plea in a § 2255 motion, *regardless* of the voluntariness of a waiver in a plea agreement. See United States v. Astacio, 14 F.Supp.2d 816, 818-19 (E.D.Va. 1998). Although a defendant waives his right to appeal, "he does not subject himself to be sentenced at the whim of the district court." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). A defendant can always raise ineffective assistance of counsel claims, as well as claims that his sentence was in excess of the maximum authorized sentence under the guidelines. United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994); Price, 95 F.3d at 364.

Appeal waivers in plea agreements are valid only if they are knowing and voluntary. United States v. Broughton-Jones, 71 F.3d 1143, 1146 (4th Cir.1995). Petitioner's waiver of appellate rights in the plea agreement was unknowing and involuntary. See Fields v. Attorney Gen. of Md., 956 F.2d 1290 (4th Cir. 1992)(even if defendant enters a guilty plea, he can raise on appeal the issue that his underlying plea was not voluntary). See United States v. Astacio, 14 F.Supp.2d 816 (E.D.Va. 1998); United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994); United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir.), cert. denied, 508 U.S. 979 (1993). See United States v. Price, 95 F.3d 364 (5th Cir. 1996)(holding that Price's claim that his plea waiver was invalid due to ineffective assistance of counsel should have been brought in a §2255 rather than on direct appeal); United States v. Henderson, 72 F.3d 463, 465 (5th Cir. 1992)(holding that the dismissal of an appeal based on a

3

waiver in the plea agreement is inappropriate where the defendant's motion to withdraw his plea is based on the claim that the waiver was tainted by ineffective assistance of counsel); United States v. Wilkes, 20 F.3d 651 (5ᵗʰ Cir. 1994)(noting that waiver of postconviction relief in plea agreement may not apply to collateral attacks based on ineffective assistance of counsel). One relevant consideration in determining if counsel was ineffective is whether the terms of the plea agreement were fair. See United States v. Wooley, 123 F.3d 627 (7th Cir. 1997)

In the plea agreement, the Government stated that although they are forcing the Petitioner to waive his appeal rights, the Government maintains their rights to appeal. This agreement is so one-sided as to be unconscionable. Under contract law, which the plea agreement is supposedly measured by, an unconscionable contract will not stand. See  United States v. Peglera, 33 F.3d 412, 413 (4th Cir. 1994); United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993); United States v. Lezine, 166 F.3d 895 (7th Cir. 1999); United States v. Laday, 56 F.3d 24 (5th Cir. 1994). Such a blanket waiver on the part of the Petitioner, in light of the government's reservation of rights, should be void as a matter of law due to public policy. The terms of the agreement were clearly unfair. The Petitioner would never have agreed to the appeal waiver if he had understood that such a waiver would preclude him from having his sentence corrected at the appellate level. The Petitioner did not know what it meant to waive his appellate rights. Yet the Petitioner's counsel still allowed him to enter into the agreement. Additionally, the Petitioner is raising issues of ineffective assistance of counsel, an issue that shouldn't be covered by an appeal waiver.

For these reasons, the Petitioner submits that there has been no valid waiver of his rights to collaterally attack his conviction and sentence. The sentencing court informed him that he had a right to appeal and no one ever told him otherwise. But if the court somehow determines that he did waive

4

his rights to appeal, he maintains that the ineffectiveness of his counsel's assistance led him to make an involuntary, unknowing, and unintelligent waiver of his rights to appeal.

**II   The Petitioner received ineffective assistance of counsel when his attorney failed to perfect an appeal when meritorious issues where present and the sentencing court informed the Petitioner that actually did have a right to appeal.**

To determine whether counsel has fallen below the minimum standard needed for effective assistance of counsel under the Sixth Amendment to the U.S. Constitution, the court must apply a two-prong test first articulated in Strickland v. Washington, 466 U.S. 668 (1984). See also United States v. Benlian, 63 F.3d 824 (9th Cir. 1995); Sanders v. Ratelle, 21 F.3d 1446 (9th Cir. 1994); Young v. Riveland, 1994 U.S. App. LEXIS 17165 (9th Cir. 1999). In Strickland, the Supreme Court decided that for a court to conclude that counsel was constitutionally ineffective in assisting a defendant two factors must be satisfied. First, counsel's performance must have fallen below an objective standard of reasonableness. Id. at 688. Second, a reasonable probability must exist that, but for counsel's errors, the proceedings probably would have had a different, positive result. Id. at 694.

Review of the first prong contemplates deference to strategic decision-making and an evaluation of counsel's decisions from counsel's perspective at the time the decisions were made. Williams v. Washington, 59 F.3d 673, 679 (7th Cir. 1995). When reviewing counsel's decisions, the court will engage in a strong presumption that counsel preformed adequately. Id. The second prong asks the reviewing court to consider whether the petitioner has demonstrated that counsel's errors were serious enough to deprive the petitioner of a fair trial thereby producing an unjust result. Id.

The court must determine whether there was a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different or whether the result

was fundamentally unfair or unreliable.  Id., citing Lockhart v. Fretwell, 506 U.S. 364 (1993).

Ultimately, the Strickland test requires courts to focus upon whether counsel's performance was

sufficient to ensure the fundamental fairness of the proceeding, not whether counsel could have done

a better job.  Id.  However, the prejudice that must be shown need not be anything more than

something as small as one additional day in jail.  See Glover v. United States, 531 U.S. 198 (2001).

Any waiver of the right to appeal should be closely scrutinized in light of the extreme

importance of the rights that a defendant is waiving.  In fact, there are two district courts that have

held that appeal waivers in plea agreements are invalid.  United States v. Perez, 46 F.Supp2d 59 (D.

Mass. 1999)(holding that appeal waiver clauses are contrary to public policy and void); United States

v. Raynor, 989 F.Supp. 43 (D.D.C. 1997)(holding that it would not accept a plea agreement that left

a defendant without the right to challenge a sentence that had not yet been imposed).  The underlying

rationale in those cases is that a defendant can hardly be said to have knowingly waived the right to

appeal when it is not even clear at the time of the waiver what issues could be appealed, especially

in light of the Petitioner's meritorious issue concerning relevant conduct which was not even known

to the Petitioner until after the plea agreement was entered.  In the instant case, since the sentence

was not yet imposed, it was impossible to determine what, if any, issues could be raised on direct

appeal.

In the present case, the Petitioner entered into a plea agreement whereby the Government

stated that they would recommend an adjustment for acceptance of responsibility.  (Plea agreement)

The Government also stated that the Petitioner waived his right to appeal.  (Plea agreement) The

Petitioner contends that his attorney's ineffectiveness started when he advised the Petitioner to enter

into this unfavorable agreement.  The only benefits that were received by the Petitioner was a

6

reduction for acceptance of responsibility, which would likely have been granted even if this was not included in the plea agreement, and the dismissal of count one, a conspiracy charge for which the Government had no evidence. The agreement to recommend an acceptance of responsibility reduction, which is granted in the majority of case where a guilty plea is entered, is not enough to offset the right to appeal the sentence imposed by the Court. This is especially true in a case such as this, where counsel should have foreseen several potential issues that would come up at sentencing. The plea agreement did state that they would recommend the low end of the guideline range, which the Government did not do. (Plea agreement at 1). As a result, the Petitioner was sentenced to the maximum sentence under the guideline range and was denied any potential benefit from the appeal waiver when the government violated the plea agreement and failed to recommend a sentence at the low end of the guidelines. .

The plea agreement in this case benefitted the Government greatly since they got a conviction without having to go through a trial and they did not have to worry about a direct appeal. However, as discussed above, the plea agreement was not fair to the Petitioner due to the waiver of his appellate rights. The Petitioner did not fully understand the rights he was waiving when he entered into the plea agreement and the court never told him the consequences of waiving such important rights. See United States v. Wessells, 936 F.2d 165, 168 (4th Cir. 1991)(a waiver is not knowingly or voluntarily made if the district court fails to specifically question the defendant concerning the waiver provision of the plea agreement during the Rule 11 colloquy and the record indicates that the defendant did not otherwise understand the full significance of the waiver); See also, United States v. Price, 95 F.3d 364 (5th Cir. 1996). The Petitioner was unaware that he would be without recourse on direct appeal even if his sentence was erroneous. Compounding the problem was the fact that the District Court

7

informed the Petitioner that he, in fact, had a right to appeal his sentence.  In fact, other than the provision contained in the plea agreement itself, there is no record of the Petitioner being informed of the appeal waiver.

Additionally, as discussed in the preceding section, counsel did not advise that under the terms of the plea agreement, he could not challenge relevant conduct, drug amount, or the erroneous adjustments at sentencing.  Due to the fact that counsel entered into a plea agreement that was not beneficial and he failed to fully inform the Petitioner the consequences of waiving such rights, the Petitioner asserts that counsel was ineffective.  Therefore, the Petitioner's plea waiver is invalid since it was not knowing and involuntary.

However, the Petitioner still maintains that the since the sentencing court stated that he had a right to appeal, counsel should have appealed the meritorious issue of the relevant conduct.  The court determined the Petitioner to be guilty of count two, possession with intent to distribute a quantity less than 500 grams, that is, approximately 297.7 grams of cocaine.  (Re-Arraignment Proceedings at 33)  At the interview by the Probation Officer for the Pre-sentence Investigation Report, Mr. Rangel truthfully revealed to the probation officer that he had been involved in two previous transactions.  (Sent. Trans. at 2)  Mr. Rangel stated that he purchased this cocaine for his own use. (Sent. Trans. at 2)  The Probation Officer included these additional transactions as relevant conduct to bring the total drug amount to 595.4 grams of cocaine and a base offense level of 26. (PSI at ¶ 16, 60)  If the relevant conduct was determined immaterial, however, the total drug amount would be 297.7 grams of cocaine and the base offense level would be 20.  (PSI at ¶ 60)  After subtracting three levels for acceptance of responsibility, the PSI determined the total offense level, when including relevant conduct, at 23, or when excluding relevant conduct, at 17.  (PSI at ¶ 16, 60)

8

The criminal history category was II. (PSI at ¶ 32) With this criminal history category, the sentencing range for an offense level of 23 is 51 to 63 months and for an offense level of 17 is 27-33 months. (U.S.S.G. Sentencing Table) This is a significant difference.

At the sentencing hearing, the defense objected to the relevant conduct. (Sent. Trans. at 2) The court overruled the objection without making a specific finding of fact as to why these additional drug amount should be included as relevant conduct. (Sent. Trans. at 6) As a result, the Petitioner was sentenced to 63 months imprisonment, 3 years supervised release, and participation in drug rehabilitation program. (Sent. Trans. at 6)

The relevant conduct issue to which he objected at sentencing was a meritorious issue that counsel should have raised on appeal. This issue had a material and prejudicial effect on the Petitioner's sentence. The Petitioner was prejudiced by counsel's ineffectiveness because it caused a waiver of his rights and because it resulted in a significantly greater prison sentence. The result was fundamentally unfair and ultimately denied Petitioner of his due process rights.

### A.    Counsel should have appealed the relevant conduct findings of the sentencing court

A defendant in a drug case can be sentenced on the basis of drugs involved in the offense for which he was convicted, as well as any other "relevant conduct." United States v. Ellis, 975 F.2d 1061, 1067 (4th Cir.1992), cert. denied, 507 U.S. 945 (1993); United States v. Maxwell, 34 F.3d 1006, 1010 (11th Cir. 1994)(holding that the district court clearly erred in determining that the defendant's distribution of an additional 546 grams of cocaine was relevant conduct since *it was not a part of the same course of conduct* as the Dilaudid scheme); See also United States v. Brazel, 102 F.3d 1120 (11th Cir. 1997).

Under § 1B1.3 of the United States Sentencing Guidelines, the court is required to consider "relevant conduct" in determining the appropriate base offense level. U.S.S.G. § 1B1.3. "'Relevant conduct' in a narcotics case, includes 'all . . . acts and omissions that were part of the same course of conduct or common scheme as the offense of conviction.'" U.S.S.G. § 1B1.3(a)(2). Thus, conduct that is not formally charged may be used by the Court in determining the appropriate Guideline range. Id. Clearly, such a system of calculating a criminal defendant's relevant conduct is susceptible to errors and should be carefully considered by the sentencing court. "A guideline system that proscribes punishment for un-convicted conduct obviously obliges courts to proceed carefully in determining the standard for relevant conduct." United States v. Shanubi, 103 F.3d 1089 (2nd Cir. 1997).

Generally, the Government bears the burden of proving, at the sentencing hearing, any enhancing factor to a defendant's sentence. United States v. Narvaez 38 F3d 162,166 (5th C. 1994) Furthermore, the district court's findings must explain how the court arrived at the particular quantity. Generic or conclusory remarks on the record simply stating that the defendant should have reasonably foreseen a certain quantity of drugs will be insufficient. United States v. Edwards 945 F2d 1387,1399-1400 (7th C. 1991); also, United States v. Webster 960 F2d 1301 (5th C. 1992) The Government must offer more than "conclusive statements" to support its arguments. United States v. Gordon, 893 F.2d 932, 936 (4th Cir. 1990). Further, the evidence presented must have a "sufficient indicia of reliability to support its probable accuracy." United States v. Uwaeme, 975 F.2d 1016, 1021 (4th Cir. 1992). In United States v. McManus, 23 F.3d 878 (4th Cir. 1994), the Court held that when a defendant makes an objection to the PSI report, the Government is required to produce sufficient evidence to support the information contained in the PSI Id. at 886. Additionally,

10

in making a determination of relevant conduct, personal use drug amounts are not to be used against a defendant in a possession with the intent to distribute case. United States v Kipp, 10 F.3d 1463 (9th Cir. 1993); United States v Wyss, 147 F.3d 631, 632-33 (4th Cir. 1998).

At sentencing, the Petitioner properly objected to amounts of drugs that the probation office included in the PSI that were not relevant to the instant offense. The Petitioner truthfully told the Probation Officer that he used cocaine and informed the Probation Officer of the amounts of cocaine that he had purchased in the past. The court, without making a finding of fact or stating on the record what drugs were being attributed to the Petitioner, overruled the Petitioner's objection to drug amounts and sentenced him based on the inaccurate amount listed in the PSI.

The Petitioner contends that the purchases he made which he told the Probation Officer about were not part of the same course of conduct or part of a common scheme or plan as the offense of conviction, which is a necessary component of proving relevant conduct. Petitioner was convicted of possession with intent to distribute a quantity less than 500 grams, that is, approximately 297.7 grams of cocaine. The so-called "relevant conduct," however, was Petitioner's purchase of cocaine for his personal use that he informed the probation officer of. The Petitioner is an addict and admitted this to the court. (Sent. Trans. at 3) These transactions were not for distribution but for his habit. These transactions were clearly not part of the common scheme or plan as the offense of conviction. Therefore, the Petitioner's counsel should have brought this meritorious issue on appeal. His failure to do so was below the professional standards and amounted to ineffective assistance of counsel.

11

## III.  CONCLUSION

The Petitioner submits that his appeal waiver in the plea agreement was not valid and was not knowingly and voluntarily entered.  The Petitioner was never informed during the change of plea hearing that he was waiving his right to appeal.  Further at sentencing, he was informed that he in fact did have a right to appeal.  Appealable issues concerning the quantity of cocaine attributed to the Petitioner for sentencing existed that would have resulted in a significant reduction in his sentence had counsel pursued the issue on direct appeal.  Under these circumstances, counsel's failure to file an appeal on the meritorious issue concerning relevant conduct was both unreasonable and prejudiced the Petitioner.  Therefore, the Petitioner's sentence must be vacated so that he can renew his right to appeal this meritorious claim.

WHEREFORE, the Petitioner asserts that he has provided the proof necessary for this Honorable Court to grant Petitioner's motion.  Accordingly, the Petitioner respectfully requests that his conviction and sentenced be vacated.

Respectfully submitted,

ROBINSON & BRANDT, PSC

By:    MATTHEW M. ROBINSON
Attorney for Appellant
11331 Grooms Road, Suite 3000
Cincinnati, Ohio 45242
(513) 381-8033
(513) 381-8043 facsimile

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been sent by regular U.S. mail with proper postage affixed thereon on this, the 10Th day of June, 2002, to the office of the Assistant United States Attorney, 600 E. Harrison St., #201, Brownsville TX 78520-7155.

Matthew M. Robinson

13

**EXHIBIT A - INDICTMENT**

CJ ___ 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

AUG 0 1 2000

Michael N. Milby
Clerk of Court

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | § | | |
| | § | | |
| vs | § | CRIMINAL NO. | |
| | § | | B - 0 0 - 3 1 7 |
| LUIS JAVIER RANGEL | § | | |

## I N D I C T M E N T

THE GRAND JURY CHARGES:

### COUNT 1

On or about July 5, 2000 in the Southern District of Texas and elsewhere and within the jurisdiction of the Court, Defendant,

### LUIS JAVIER RANGEL,

did knowingly and intentionally conspire and agree with other persons known and unknown to the Grand Jurors to knowingly and intentionally possess with intent to distribute a quantity less than 500 grams of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C).

### COUNT 2

On or about July 5, 2000, in the Southern District of Texas and within the jurisdiction of the Court, Defendant,

### LUIS JAVIER RANGEL,

did knowingly and intentionally possess with intent to distribute a quantity less than 500 grams, that is, approximately 297.7 grams, gross weight, of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

MERVYN M. MOSBACKER
UNITED STATES ATTORNEY

_____
JOSE A. ESQUIVEL, JR.
Assistant United States Attorney

2

EXHIBIT B - PLEA AGREEMENT

**UNITED STATES DISTRICT COURT FOR THE**

**SOUTHERN DISTRICT OF TEXAS**

**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

OCT 05 2000

Michael N. Milby, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| V. | § |
| LUIS JAVIER RANGEL | |

CRIMINAL NO. B-00-317

### PLEA AGREEMENT

COMES NOW the United States of America, by and through its attorneys Mervyn M. Mosbacker, United States Attorney for the Southern District of Texas and Jose A. Esquivel, Jr., Assistant United States Attorney, and the defendant, LUIS JAVIER RANGEL, and the defendant's counsel, pursuant to Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure, and state that they have entered into an agreement, the terms and conditions of which are as as follows:

1. The defendant, LUIS JAVIER RANGEL, agrees to plead guilty to <u>Count Two</u> of the Indictment. <u>Count Two</u> of the indictment charges the defendant with <u>possession with intent to distribute a quantity less than 500 grams of cocaine</u>, in violation of Title 21, United States Code, § <u>841(a)(1) and 841(b)(1)(C)</u>.

2. In exchange for the Defendant's plea of guilty and truthful testimony to the Court at the time of the Defendant's rearraignment and sentencing and for the Defendant's truthful rendition of facts to the U. S. Probation Department for the preparation of the Defendant's Presentence Investigation Report, <u>the Government will recommend the Defendant be given  full credit for acceptance of responsibility, and be sentenced to the low end  of the Guideline level he scores. The government will dismiss the remaining count.</u>



3. The penalty for each violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C),to include a maximum term of twenty (20) years imprisonment, and a fine of $1,000,000; and a (possible) period of supervised release of at least three (3) years. The defendant also acknowledges and understands that if the defendant violates the conditions of any period of supervised release which may be imposed as part of the sentence, then the Defendant may be imprisoned for the entire term of supervised release without credit for time already served on the term of supervised release prior to such violation. The defendant cannot be placed on probation or have the imposition or execution of the sentence suspended. Further, the defendant is not eligible for parole.

4. The defendant will pay to the United States District Clerk a special assessment in the amount of One Hundred dollars ($100.00) per count of conviction, as required in Title 18, United States Code, Section 3013(a)(2)(A). The payment will be by certified check payable to United States District Clerk, Brownsville, Texas 78520.

5. The defendant understands that the Court is permitted, pursuant to Section 5E1.2(I) of the Sentencing Guidelines and Policy Statements, to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment, term of supervised release and probation, if any are ordered.

6. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.

7. The defendant agrees to file a sworn financial affidavit that any fine or restitution imposed by the Court will be due and payable immediately. The defendant also agrees not to attempt to avoid paying any fine or restitution imposed by the Court through any proceeding

2

pursuant to the United States Bankruptcy Code. The defendant hereby waives all rights, if any, to obtain discharge or to delay payment of any fine or restitution obligation or alter the time for payment by filing a petition pursuant to the Bankruptcy Code. The defendant hereby stipulates that enforcement of any fine or restitution obligation by the United States or a victim is not barred or affected by the automatic stay provisions of the United States Bankruptcy Code (Title 11, United States Code, Section 362), and that enforcement of any fine or restitution obligation by the United States is a valid exercise of its police or regulatory power within the meaning of Title 11, United States Code, Section 362(b). The defendant hereby stipulates and agrees not to institute or participate in any proceeding to interfere with, alter, or bar enforcement of any fine or restitution obligation pursuant to the automatic stay or other provision of the Bankruptcy Code in any case filed by the defendant or the defendant's creditors. Upon request of the United States or the victim, the defendant will execute an order or stipulation granting the United States or the victim relief from the automatic stay or other Bankruptcy Code provisions in order to enforce any fine or restitution obligation. The defendant hereby stipulates that any fine or restitution obligation imposed by the Court is not dischargeable in any case commenced by the defendant or the defendant's creditors pursuant to the Bankruptcy Code. The defendant's waivers and stipulations or agreements set forth above are made in exchange for the United States' concessions set forth in this plea agreement.

8.   The defendant understands that the sentence to be imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw a guilty plea and will remain bound to fulfill all of the obligations under this plea agreement.

3

9.  The defendant is aware that the defendant's sentence will be imposed in accordance with the Sentencing Guidelines and Policy Statements.  The defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense(s) to which the defendant pleads guilty.  The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.  Knowing that, the defendant waives the right to appeal the sentence (or the manner in which it was determined) if such sentence is within the guidelines range as determined by the Court.  This agreement does not, however, affect the rights of the defendant to appeal an illegal sentence as set forth in Title 18, United States Code, Section 3742(a)(1).  Nor does this agreement affect the rights of the defendant to appeal based upon allegations of ineffective assistance of counsel or prosecutorial misconduct.

10.  In agreeing to this waiver, the defendant is aware that a sentence has not yet been determined by the Court.  The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court.  The United States does not make any promise or representation concerning what sentence the defendant will receive.  Realizing the uncertainty in estimating what sentence the defendant will ultimately receive, the defendant knowingly waives the right to appeal any sentence imposed within the guidelines range in exchange for the concessions made by the United States in this plea agreement.

11.  The United States reserves the right to carry out its responsibilities under guidelines sentencing.  Specifically, the United States reserves the right:  (a) to bring its version of the facts of this case including its file and any investigative files to the attention of the Probation Office in

4

connection with that office's preparation of a presentence report; (b) to dispute sentencing factors or facts material to sentencing; (c) to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office and (d) to file a pleading relating to these issues, in accordance with Section 6A1.2 of the <u>Sentencing Guidelines and Policy Statements</u>.

12. The United States agrees that it will not further criminally prosecute defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment/information. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and the defendant; it does not bind any other United States Attorney. The United States will bring this plea agreement and the full extent of the defendant's cooperation to the attention of other prosecuting offices if requested.

13. The Defendant understands that by entering into this Agreement, he/she surrenders certain rights as provided in this Agreement. Defendant understands that the rights of defendants include the following:

a. If the defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States and the court all agree.

b. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those witnesses and his/her attorney would be able to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the Court.

5

c. At a trial, the defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

14. The defendant understands that nothing in this plea agreement, however, will restrict access by the Probation Office or the Court to information and records in the possession of the United States, including that obtained from the defendant.

15. If the defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, or if the Defendant commits, attempts to commit or is arrested for the commission of any crime after the Defendant signs this plea agreement, the United States will be released from its obligations under the plea agreement. If the defendant knowingly withholds evidence, or otherwise is not completely truthful with the United States, an officer of the United States, any law enforcement officer, or in testimony before the grand jury or at trial; or if the defendant knowingly gives false information to the United States relating to another's participation in criminal activity, then:

a. The defendant may be prosecuted for perjury, false declaration, false statement, and/or obstruction of justice or any other offenses that may have been committed;

b. Any information and documents that have been disclosed by the defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom will be used against the defendant in any prosecution;

c. The United States will be permitted to recommend to the Court any sentence it considers appropriate, up to and including the maximum possible sentence.

16. Whether the defendant has breached any provision of this plea agreement, if contested by the parties, shall be determined by the Court in an appropriate proceeding during which the

6

defendant's disclosures and documentary evidence shall be admissible and during which the United States shall be required to establish a breach of the plea agreement by a preponderance of the evidence.  The provisions of this paragraph do not apply, however, to the United States' decision whether to file a motion based on "substantial assistance" as that phrase is used in Rule 35(b) of the Federal Rules of Criminal Procedure and Section 5K1.1 of the <u>Sentencing Guidelines and Policy Statements</u>.  The defendant agrees that the decision whether to file such a motion rests within the sole discretion of the United States.

17. The United States reserves its option to seek any departure from the applicable sentencing guidelines, pursuant to Section 5K of the <u>Sentencing Guidelines and Policy Statements</u>, or Rule 35(b) of the Federal Rules Criminal Procedure, if in its discretion, it is determined that such a departure is appropriate.

18.  This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel.  No promises or representations have been made by the United States excepts as set forth in writing in this plea agreement.  The defendant acknowledges that no threats have been made against the defendant and that the defendant is pleading guilty freely and voluntarily because the defendant is guilty.  Any modification of this plea agreement shall be valid only as set forth in writing in a supplemental or revised plea agreement signed by all parties.

X _____
LUIS JAVIER RANGEL

APPROVED:

7

Assistant U. S. Attorney

Attorney for Defendant

8

I have consulted with my counsel and fully understand all my rights with respect to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the <u>Sentencing Guidelines and Policy Statements</u> which may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and I voluntarily agree to it.

Date: _9/27/00_                                      _____
                                                     LUIS JAVIER RANGEL

**EXHIBIT C - PLEA HEARING**

COPY

1     IN THE UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF TEXAS
2        BROWNSVILLE DIVISION

3  ————————————————————————

           )
4  UNITED STATES OF AMERICA  )
           ) CRIMINAL ACTION NO.
5  VS.         ) B-00-317
           )
6  LUIS JAVIER RANGEL   )
  ————————————————————————)

7

8

9      RE-ARRAIGNMENT PROCEEDINGS
     BEFORE THE HONORABLE HILDA G. TAGLE
10       OCTOBER 5, 2000

11 APPEARANCES:

12 For the Government:   MR. JOSE "JOE" ESQUIVEL
           Assistant United States Attorney
13          Brownsville, Texas

14 For the Defendant:   MR. JOE VALLE
           Attorney at Law
15          Brownsville, Texas

16 Transcribed by:    BRECK C. RECORD
           Official Court Reporter
17          600 E. Harrison, Box 16
           Brownsville, Texas  78520
18          (956)548-2510

19

20

21

22

23

24

25

   Captured and Transcribed by Computer - Eclipse

1          THE COURT:  00-CR-317-01, the United States of America

2     versus Luis Javier Rangel.  What says the Government?

3          AUSA ESQUIVEL:  Joe Esquivel for the Government, present

4     and ready, Your Honor.

5          THE COURT:  What says the Defendant?

6          MR. VALLE:  Joe Valle for Mr. Rangel.  That will be a

7     re-arraignment, Your Honor.

8       (At this time other cases were heard at which time the

9     following occurred, to wit:)

10          THE COURT:  Okay.  All right then.  I'm going to ask all

11     of you who have indicated before that you are entering a plea of

12     guilty to please raise your right hand so that you may be sworn.

13       (Defendants sworn.)

14          THE COURT:  All right.  I'm going to ask all of you who

15     have just been sworn to please lower your hands right now and

16     then I'm going to ask your name.

17       Sir, what is your name?

18          THE DEFENDANT:  Jose De Jesus Chavez-Chavez.

19          THE COURT:  And have you just now been sworn by the

20     clerk of The Court?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  Okay.  Do you need an interpreter?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Okay.  It would be easier when you respond

25     that you respond in Spanish just so that there's no confusion,

Captured and Transcribed by Computer - Eclipse

1    okay?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  And, sir, do you understand you

4    have right to have your case taken up individually?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Are you in agreement that your case can be

7    taken up at the same time that these others are being taken up

8    by The Court?

9              THE DEFENDANT:  Yes.

10             THE COURT:  All right.  What is your name, sir?

11             THE DEFENDANT:  Jaime Solis-Martinez.

12             THE COURT:  Were just now sworn by the clerk of The

13   Court, as well?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  All right.  Sir, do you know that you have

16   the right to have your case taken up individually?

17             THE DEFENDANT:  Yes, I do.

18             THE COURT:  Are you asking The Court or are you in

19   agreement that The Court can take up your case along with the

20   others that are before The Court today?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  What is your name?

23             THE DEFENDANT:  Rigoberto Mora-Ochoa.

24             THE COURT:  Have you just now been sworn by the Clerk of

25   The Court, as well?

Captured and Transcribed by Computer - Eclipse

```
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  Are you in agreement that your case can be
 3    taken up with the others that are before The Court this
 4    afternoon?
 5              THE DEFENDANT:  Yes.
 6              THE COURT:  What is your name, sir?
 7              THE DEFENDANT:  Luis Javier Rangel.
 8              THE COURT:  Speak up, please.
 9              THE DEFENDANT:  Luis Javier Rangel.
10              THE COURT:  All right.  Were you just now sworn by the
11    Clerk of The Court?
12              THE DEFENDANT:  Yes, Your Honor.
13              THE COURT:  Are you in agreement that your case can be
14    taken up with the others before The Court today?
15              THE DEFENDANT:  Yes, Your Honor.
16              THE COURT:  What is your name, sir?
17              THE DEFENDANT:  Alberto Ramirez-Blanco.
18              THE COURT:  Were you just now sworn by the Clerk of The
19    Court?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Are you in agreement that your case can be
22    taken up with the others before The Court this afternoon?
23              THE DEFENDANT:  Yes.
24              THE COURT:  All right.  What is your name, sir?
25              THE DEFENDANT:  Ezequiel Rosales-Torres.
```

Captured and Transcribed by Computer - Eclipse

1          THE COURT:  Were just now sworn by the Clerk of The

2   Court?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  And are you in agreement that

5   your case can be taken up with the others before The Court this

6   afternoon?

7          THE DEFENDANT:  Yes.

8          THE COURT:  What is your name, sir?

9          THE DEFENDANT:  Jose Eleno Santibanez-Acevedo.

10         THE COURT:  Okay.  Sir, were you just sworn by the Clerk

11   of The Court?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Are you in agreement that your case can be

14   take up with the others before The Court this afternoon?

15         THE DEFENDANT:  Yes.

16         THE COURT:  All right then.  Now, do you understand that

17   because -- well, I guess I need to ask for each one of these

18   cases whether there's a written plea agreement.  On

19   Chavez-Chavez, that's 347, Mr. Wilde, is there no written plea

20   agreement?

21         MR. WILDE:  There is none, Your Honor.

22         THE COURT:  No agreement at all?

23         MR. WILDE:  No, Your Honor.

24         THE COURT:  And in 00-20, there is a written plea

25   agreement; is that correct, Mr. Valle?

1        MR. VALLE:  Yes, Your Honor.

2        THE COURT:  And in 360, is there a written plea

3    agreement?

4        MR. VALLE:  Yes, Your Honor.

5        THE COURT:  And 317, as well?

6        MR. VALLE:  Yes, Your Honor.

7        THE COURT:  Mr. Cantu, in 321?

8        MR. CANTU:  No written agreement.

9        THE COURT:  But there is a plea agreement?

10       MR. CANTU:  There is no plea agreement, Your Honor.

11       THE COURT:  And Mr. Garza, in 282?

12       MR. GARZA:  There's a written plea agreement.

13       THE COURT:  Mr. Canales, in 365?

14       MR. CANALES:  Yes, Your Honor, there is.

15       THE COURT:  Okay.  Now, that you've been placed under

16    oath, if you would answer any of my questions falsely, your

17    answers could be used against you in another prosecution for

18    perjury for making a false statement, do you understand that?

19    And when I address you, I want to ask you to please answer so

20    that your answer can be translated for the record by the

21    interpreter.  And so if the person who's next to you would wait

22    until that interpreter's response is recorded before you start

23    speaking; otherwise, if people speak over each other, it makes

24    it very difficult for a record to be made.  So, just listen to

25    the person in front of you or before you.  Once his response to

Captured and Transcribed by Computer - Eclipse

1    The Court has been made by the interpreter or by the Defendant,

2    then you can speak up in turn.

3        All right.  Sir, do you understand that because you've been

4    placed under oath, any of your answers that are false, those

5    answers could be used against you in another prosecution for

6    perjury for making a false statement.

7        Do you understand that?

8            THE DEFENDANT:  Yes.

9            THE DEFENDANT:  Yes, ma'am.

10           THE DEFENDANT:  Yes, ma'am.

11           THE DEFENDANT:  Yes.

12           THE DEFENDANT:  Yes.

13           THE DEFENDANT:  Yes.

14           THE DEFENDANT:  Yes.

15           THE COURT:  The record should reflect that all

16   defendants have answered in the affirmative.

17       Now, if at any time you don't understand any question that I

18   have asked or explanation that I have given, please tell me and

19   I will repeat it or explain it to you.

20       Do you understand that?

21           THE DEFENDANT:  Yes.

22           THE DEFENDANT:  Yes, ma'am.

23           THE DEFENDANT:  Yes, Your Honor.

24           THE DEFENDANT:  Yes, Your Honor.

25           THE DEFENDANT:  Yes.

Captured and Transcribed by Computer - Eclipse

1      THE DEFENDANT:  Yes.

2      THE DEFENDANT:  Yes.

3      THE COURT:  Okay.  That's what I was talking about.  If

4  you'll just wait.  When the person next to you has answered, his

5  answer has to be recorded by the interpreter, so just wait until

6  the interpreter speaks before you begin your response, okay?

7      The record should reflect that all the defendants have

8  answered in the affirmative.

9      If at any time you want to stop the proceedings to confer

10  privately with your attorney, please let know and you will be

11  permitted to do so.

12      Do you understand that?

13      THE DEFENDANT:  Yes.

14      THE DEFENDANT:  Yes, ma'am.

15      THE DEFENDANT:  Yes, Your Honor.

16      THE DEFENDANT:  Yes, Your Honor.

17      THE DEFENDANT:  Yes.

18      THE DEFENDANT:  Yes.

19      THE DEFENDANT:  Yes.

20      THE COURT:  All defendants have answered in the

21  affirmative.

22      Now, I'm going to ask you again your complete name and also

23  whether you have ever been known by other name.

24      Sir, what is your complete, legal name?

25      THE DEFENDANT:  Jose De Jesus Chavez-Chavez.


Captured and Transcribed by Computer - Eclipse

1          THE COURT:  Have you ever been known by any other name?

2          THE DEFENDANT:  No.

3          THE COURT:  What about the name Manuel Pena-Chavez.

4          THE DEFENDANT:  I just invented it.

5          THE COURT:  Are there any other names that you have

6     invented?

7          THE DEFENDANT:  No.

8          THE COURT:  What is your date of birth?

9          THE DEFENDANT:  11/9/35.

10         THE COURT:  65?

11         THE DEFENDANT:  65.

12         THE COURT:  Okay.  We have down that it was August

13    the -- I'm sorry, August the 2nd, 1965.  Are you saying that's

14    not correct?

15         THE DEFENDANT:  No, it is not.

16         THE COURT:  So, is it November 9th, 1965 or September

17    11th, 1965?

18         THE DEFENDANT:  11/9/65.

19         THE COURT:  So, it is November 9th, 1965?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Okay.  And how far did you go in school?

22         THE DEFENDANT:  Up to the sixth.

23         THE COURT:  And what country or where?

24         THE DEFENDANT:  In Mexico.

25         THE COURT:  And are you able to read, write, or speak or

Captured and Transcribed by Computer - Eclipse

1    understand English.

2              THE DEFENDANT:  A little bit.

3              THE COURT:  By the way, what country are you a citizen?

4              THE DEFENDANT:  Well, I lived more here than in Mexico.

5              THE COURT:  But you are a citizen of Mexico?

6              THE DEFENDANT:  Yes.

7              THE COURT:  All right.  And, sir, what is your complete,

8    legal name, please?

9              THE DEFENDANT:  Jaime Solis-Martinez.

10             THE COURT:  Have you ever been known by any other name?

11             THE DEFENDANT:  No, ma'am.

12             THE COURT:  What is your date of birth?

13             THE DEFENDANT:  3/18/71.

14             THE COURT:  That makes you how old right now?

15             THE DEFENDANT:  29.

16             THE COURT:  How far did you go in school?

17             THE DEFENDANT:  11th grade.

18             THE COURT:  Where did you go to school.

19             THE DEFENDANT:  Weslaco High School.

20             THE COURT:  So you're able to read, write, speak and

21   understand English?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  By the way, I see that this is a bond

24   jumping.  What happened to the primary case?

25             MR. VALLE:  He's been sentenced, Your Honor, in that

Captured and Transcribed by Computer - Eclipse

```
1    case.

2              THE COURT:  Okay.  When was this sentence imposed?

3              MR. VALLE:  About four weeks ago, three to four weeks

4    ago.

5              THE COURT:  Okay.  And now sir, what is your complete,

6    legal name?

7              THE DEFENDANT:  Rigoberto Mora-Ochoa.

8              THE COURT:  Have you ever been know by any other name?

9              THE DEFENDANT:  No, ma'am.

10             THE COURT:  What is your date of birth?

11             THE DEFENDANT:  4/4/72.

12             THE COURT:  And that makes you how old right now?

13             THE DEFENDANT:  28.

14             THE COURT:  How far did you go in school?

15             THE DEFENDANT:  Up to 11th grade.

16             THE COURT:  Where did you go to school.

17             THE DEFENDANT:  Los Fresnos High School.

18             THE COURT:  Are you able to read, write, speak and

19   understand English?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Of what country are you a citizen?

22             THE DEFENDANT:  Mexico.

23             THE COURT:  And Mr. Solis, let me ask you, what country

24   are you a citizen?

25             THE DEFENDANT:  United States of America, ma'am.
```

Captured and Transcribed by Computer - Eclipse

12

1          THE COURT:  All right.  What is your complete, legal

2     name, sir?

3          THE DEFENDANT:  Luis Javier Rangel.

4          THE COURT:  Have you ever been known any other name?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Your date of birth?

7          THE DEFENDANT:  6/22/75.

8          THE COURT:  How old are you now?

9          THE DEFENDANT:  25.

10         THE COURT:  How far did you go in school?

11         THE DEFENDANT:  Ninth grade.

12         THE COURT:  Where?

13         THE DEFENDANT:  Harlingen High School.

14         THE COURT:  And you're able to read, write, speak and

15    understand English?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Are you a U.S. citizen?

18         THE DEFENDANT:  Yes.

19         THE COURT:  All right.  What is your complete, legal

20    name, please?

21         THE DEFENDANT:  Alberto Ramirez-Blanco.

22         THE COURT:  Have you ever been known by any other name?

23         THE DEFENDANT:  Yes.

24         THE COURT:  What other name?

25         THE DEFENDANT:  Guadalupe Aldame.

Captured and Transcribed by Computer - Eclipse

13

1          THE COURT:  All right.  And your date of birth?

2          THE DEFENDANT:  October 1st of 1953.

3          THE COURT:  Okay.  We have down it is 1963, but it is

4    1953.

5          THE DEFENDANT:  '53.

6          THE COURT:  That makes -- how old are you?

7          THE DEFENDANT:  47.

8          THE COURT:  How far did you go in school?

9          THE DEFENDANT:  Up to the sixth.

10          THE COURT:  Where?

11          THE DEFENDANT:  In El Salvador.

12          THE COURT:  And are you able to read, write, speak and

13    understand English?

14          THE DEFENDANT:  No.

15          THE COURT:  And I see you're a resident alien; is that

16    correct?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  But you're a citizen of El

19    Salvador?

20          THE DEFENDANT:  Yes, I'm a citizen.

21          THE COURT:  Okay.  And what is your complete, legal

22    name, sir?

23          THE DEFENDANT:  Ezequiel Rosales-Torres.

24          THE COURT:  Have you ever been known by any other name?

25          THE DEFENDANT:  Yes.

1       THE COURT:  Okay.  And what name is that?

2       THE DEFENDANT:  Juan Gonzalez.

3       THE COURT:  Your date of birth, please?

4       THE DEFENDANT:  February the 28th of 1957.

5       THE COURT:  How old are you now?

6       THE DEFENDANT:  43 years old.

7       THE COURT:  How far did you go in school?

8       THE DEFENDANT:  Up to the third.

9       THE COURT:  Where?

10      THE DEFENDANT:  In Mexico.

11      THE COURT:  Okay.  And so are you a citizen of Mexico?

12      THE DEFENDANT:  Yes.

13      THE COURT:  And are you able to read, write, speak and

14  understand English?

15      THE DEFENDANT:  No.

16      THE COURT:  Okay.  And what is your complete, legal

17  name, please?

18      THE DEFENDANT:  Jose Eleno Santibanez-Acevedo.

19      THE COURT:  All right.  Have you ever been known by any

20  other name?

21      THE DEFENDANT:  No.

22      THE COURT:  What is your date of birth?

23      THE DEFENDANT:  July 20 of 1969.

24      THE COURT:  That means you're how old right now?

25      THE DEFENDANT:  31 years of age.

```
1            THE COURT:  Okay.  How far did you go in school?

2            THE DEFENDANT:  Up to first year of high school.

3            THE COURT:  Where?

4            THE DEFENDANT:  Mexico.

5            THE COURT:  All right.  And are you able to read, write

6    or speak or understand English?

7            THE DEFENDANT:  No.

8            THE COURT:  And let me see, of what country are you a

9    citizen?

10           THE DEFENDANT:  From Mexico.

11           THE COURT:  Okay.  Then I'm going to ask you whether

12   you've ever been treated for any mental illness or addiction to

13   drugs of any kind?

14           THE DEFENDANT:  No.

15           THE DEFENDANT:  No, ma'am.

16           THE DEFENDANT:  No, ma'am.

17           THE DEFENDANT:  No, ma'am.

18           THE DEFENDANT:  No.

19           THE DEFENDANT:  No.

20           THE DEFENDANT:  No.

21           THE COURT:  All the defendants have answered in the

22   negative.

23      Have you taken any drug, medicine or intoxicants in the last

24   24 hours?

25           THE DEFENDANT:  No.
```

Captured and Transcribed by Computer - Eclipse

16

```
1              THE DEFENDANT:  No, ma'am.

2              THE DEFENDANT:  No, Your Honor.

3              THE DEFENDANT:  No, Your Honor.

4              THE DEFENDANT:  No.

5              THE DEFENDANT:  No.

6              THE DEFENDANT:  No.

7              THE COURT:  All defendants have answered in the

8      negative.

9          Now, have you received a copy of the indictment in the case

10     pending against you, that is, the written charges or acquisition

11     the Government has brought against you?

12             THE DEFENDANT:  Yes.

13             THE DEFENDANT:  Yes, ma'am.

14             THE DEFENDANT:  Yes, ma'am.

15             THE DEFENDANT:  Yes, Your Honor.

16             THE DEFENDANT:  Yes.

17             THE DEFENDANT:  Yes.

18             THE DEFENDANT:  Yes.

19             THE COURT:  All defendants have answered in the

20     affirmative.

21         And have you fully discussed those charges and this case in

22     general with your attorney?

23             THE DEFENDANT:  Yes.

24             THE DEFENDANT:  Yes, ma'am.

25             THE DEFENDANT:  Yes, ma'am.
```

Captured and Transcribed by Computer - Eclipse

```
 1              THE DEFENDANT:  Yes, Your Honor.

 2              THE DEFENDANT:  Yes.

 3              THE DEFENDANT:  Yes.

 4              THE DEFENDANT:  Yes.

 5              THE COURT:  All defendants have answered in the

 6   affirmative.

 7         And have you asked your attorney questions about the charges

 8   in this case in general and received answers that you have been

 9   able to understand?

10              THE DEFENDANT:  Yes.

11              THE DEFENDANT:  Yes, ma'am.

12              THE DEFENDANT:  Yes, ma'am.

13              THE DEFENDANT:  Yes, ma'am.

14              THE DEFENDANT:  Yes.

15              THE DEFENDANT:  Yes.

16              THE DEFENDANT:  Yes.

17              THE COURT:  All defendants have answered in the

18   affirmative.

19         Are you fully satisfied with the explanations that you've

20   been given by your attorney and the advice that he's given you?

21              THE DEFENDANT:  Yes.

22              THE DEFENDANT:  Yes, ma'am.

23              THE DEFENDANT:  Yes, Your Honor.

24              THE DEFENDANT:  Yes, Your Honor.

25              THE DEFENDANT:  Yes.
```

Captured and Transcribed by Computer - Eclipse

18

```
1            THE DEFENDANT:  Yes.

2            THE DEFENDANT:  Yes.

3            THE COURT:  All defendants have answered in the

4    affirmative.

5        (At this time The Court asked specific questions of the

6        other defendants at which time the following occurred:)

7            THE COURT:  In 00-317, Mr. Rangel you're charged with

8    two counts in this indictment:  Count One being the conspiracy

9    to possess with intent to distribute a quantity less than

10   500 grams of cocaine, and Count Two being possession with intent

11   to distribute a quantity less than 500 grams, that is,

12   approximately 297.7 grams gross weight of cocaine.  Is that what

13   you understood the charge to be against you?

14           THE DEFENDANT:  Yes, ma'am.

15           THE COURT:  But also it is my understanding that you're

16   going to be pleading guilty to Count Two; is that correct?

17           THE DEFENDANT:  Yes, ma'am.

18           THE COURT:  Would the Government please read the

19   indictment?

20           AUSA ESQUIVEL:  Yes, Your Honor.  United States of

21   America versus Luis Javier Rangel.  Indictment.  Grand jury

22   charges in Count Two, on or about July 5th, 2000 in the Southern

23   District of Texas and within the jurisdiction of The Court,

24   Defendant, Luis Javier Rangel, did knowingly and intentionally

25   possess with intent to distribute a quantity less than
```

Captured and Transcribed by Computer - Eclipse

1    500 grams, that is, approximately 297.7 grams gross weight of

2    cocaine, a Schedule Two controlled substance.

3        In violation of Title 21, United States Code, Sections

4    841(a)(1) and 841(b)(1)(C), and Title 18 United States Code,

5    Section II.  Signed true bill, foreperson of the grand jury.

6        Mr. Rangel, as to Count Two, did you understand the charges

7    as read to you, sir?

8            THE DEFENDANT:  Yes, sir.

9            AUSA ESQUIVEL:  How do you plead, guilty or not guilty?

10            THE DEFENDANT:  Guilty.

11            THE COURT:  All right.

12        (At this time The Court asked specific questions of the

13        other defendants at which time the following occurred:)

14            THE COURT:  Do you understand that you can be found

15    guilty of the offense that's been alleged in the indictment

16    pending against you in only one of two ways, either by entering

17    a plea of guilty today and having The Court accept your plea or

18    by being convicted at a trial?

19        Do you understand that, sir?

20            THE DEFENDANT:  Yes.

21            THE DEFENDANT:  Yes, ma'am.

22            THE DEFENDANT:  Yes, Your Honor.

23            THE DEFENDANT:  Yes, ma'am.

24            THE DEFENDANT:  Yes.

25            THE DEFENDANT:  Yes.

Captured and Transcribed by Computer - Eclipse

1       THE DEFENDANT:  Yes.

2       THE COURT:  All defendants have answered in the

3  affirmative.

4       (At this time The Court asked specific questions of the

5       other defendants at which time the following occurred:)

6       THE COURT:  All right.  Mr. Rangel, if The Court finds

7  you guilty of the offense of possession with intent to

8  distribute, do you understand that the law provides for a

9  maximum term of imprisonment of 20 years?  Did you understand

10  that?

11       THE DEFENDANT:  Yes, ma'am.

12       THE COURT:  Furthermore, the law provides for a fine of

13  up to $1 million, did you understand that?

14       THE DEFENDANT:  Yes, ma'am.

15       THE COURT:  And upon release from imprisonment, the law

16  further provides for a possible period of supervised release of

17  at least three years, did you understand that?

18       THE DEFENDANT:  Yes, ma'am.

19       THE COURT:  All right.

20       (At this time The Court asked specific questions of the

21       other defendants at which time the following occurred:)

22       THE COURT:  Do you understand that the period of

23  supervised release means that you have to comply with condition

24  of supervised release which will include things like reporting

25  or maybe urinalysis or any conditions that The Court feels

Captured and Transcribed by Computer - Eclipse

1    appropriate that should you violate those continues, you could

2    be revoked and sent back to prison.

3        Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE DEFENDANT:  Yes, ma'am.

6            THE DEFENDANT:  Yes, ma'am.

7            THE DEFENDANT:  Yes, Your Honor.

8            THE DEFENDANT:  Yes.

9            THE DEFENDANT:  Yes.

10           THE DEFENDANT:  Yes.

11           THE COURT:  All defendants have answered in the

12   affirmative.

13       And do you further understand that you are obligated to pay

14   a $100 assessment in addition to any fine that is assessed?

15           THE DEFENDANT:  Yes.

16           THE DEFENDANT:  Yes, ma'am.

17           THE DEFENDANT:  Yes, ma'am.

18           THE DEFENDANT:  Yes, ma'am.

19           THE DEFENDANT:  Yes.

20           THE DEFENDANT:  Yes.

21           THE DEFENDANT:  Yes.

22           THE COURT:  All defendants have answered in the

23   affirmative.

24       And also, do you understand that parole has been abolished

25   and if you are sentenced to prison, you would not be released

Captured and Transcribed by Computer - Eclipse

1    early on parole.

2        Do you understand that?

3            THE DEFENDANT:  Yes.

4            THE DEFENDANT:  Yes, ma'am.

5            THE DEFENDANT:  Yes.

6            THE DEFENDANT:  Yes.

7            THE DEFENDANT:  Yes.

8            THE DEFENDANT:  Yes.

9            · THE DEFENDANT:  Yes.

10            THE COURT:  All defendants have answered in the

11    affirmative.

12        All right.  Mr. Rangel and Mr. Solis, do you understand that

13    since this charge is a felony, a conviction may have the

14    additional consequences of depriving you of certain civil

15    rights, such as the right to vote, the right to hold public

16    office, the right to serve on a jury and the right to possess

17    any kind of firearm?

18        Mr. Solis, do you understand that?

19            THE DEFENDANT:  Yes, ma'am.

20            THE COURT:  Mr. Rangel, do you understand that?

21            THE DEFENDANT:  Yes, Your Honor.

22            THE COURT:  All right.

23        (At this time The Court asked specific questions of the

24        other defendants at which time the following occurred:)

25            THE COURT:  All right.  Mr. Rangel, I'll show you now

1    the document entitled plea packet memo and ask you whether

2    that's your signature on this line here?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  And on the plea agreement attached to it, is

5    this your signature on Page 7 I'm showing you now?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  And on Page 9, is that your signature, as

8    well?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  All right.  And you speak English and were

11   you able to read the documents for yourself or at least have

12   some explanation of the documents before you signed them?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  If you had questions, was your attorney able

15   to answer the questions to your satisfaction?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Would the Government please recite what the

18   terms are?

19             AUSA ESQUIVEL:  Yes, Your Honor.  In exchange for the

20   Defendant's please to Count Two, the Government will recommend

21   that the Defendant be given full credit for acceptance of

22   responsibility be sentenced at the low end of the guideline

23   level he scores.  Additionally, the Government will dismiss the

24   remaining count, Your Honor.

25             THE COURT:  Mr. Valle, is that the terms that you

1    discussed with your client?

2              MR. VALLE:  Yes, they are, Your Honor.

3              THE COURT:  Do you feel he understood your explanation

4    of those terms?

5              MR. VALLE:  Yes.

6              THE COURT:  Mr. Rangel, do you confirm those are the

7    terms that you discussed with your attorney?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  And do you understand I don't have to follow

10   to recommendation by the Government?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And that you wouldn't be able to withdraw

13   your plea of guilty if I say that, you know, I don't find it

14   appropriate.

15             THE DEFENDANT:  Yes, ma'am.

16        (At this time The Court asked specific questions of the

17        other defendants at which time the following occurred:)

18             THE COURT:  All right.  Now, do you understand that The

19   Court is going to be determining your punishment based on the

20   findings made by The Court as a result of a presentence report

21   that is going to be prepared and is going to go into your

22   background, including your employment history, your criminal

23   history, and the facts of this case, and relevant and related

24   conduct?

25        Do you understand that?

```
1              THE DEFENDANT:  Yes.

2              THE DEFENDANT:  Yes, ma'am.

3              THE DEFENDANT:  Yes, Your Honor.

4              THE DEFENDANT:  Yes, Your Honor.

5              THE DEFENDANT:  Yes.

6              THE DEFENDANT:  Yes.

7              THE DEFENDANT:  Yes.

8              THE COURT:  All defendants have answered in the

9    affirmative.

10        And so, do you further understand that sometimes if certain

11   special facts are found or certain law or rules apply, The Court

12   is authorized to sentence you above or below the guideline range

13   in which you fall, but in no event could your punishment ever be

14   greater than maximum authorized by law?

15        Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE DEFENDANT:  Yes, ma'am.

18             THE DEFENDANT:  Yes, ma'am.

19             THE DEFENDANT:  Yes, Your Honor.

20             THE DEFENDANT:  Yes.

21             THE DEFENDANT:  Yes.

22             THE DEFENDANT:  Yes.

23             THE COURT:  All defendants have answered in the

24   affirmative.

25        And the sentencing guidelines as they pertain to you cannot
```

Captured and Transcribed by Computer - Eclipse

1    be determined today and we can only know what the guidelines

2    will be as they apply to you after The Court reads the report

3    and makes findings based on that report or any evidence that is

4    presented at sentencing.

5        Do you understand that?

6            THE DEFENDANT:  Yes.

7            THE DEFENDANT:  Yes, ma'am.

8            THE DEFENDANT:  Yes, ma'am.

9            THE DEFENDANT:  Yes, Your Honor.

10           THE DEFENDANT:  Yes.

11           THE DEFENDANT:  Yes.

12           THE DEFENDANT:  Yes.

13           THE COURT:  All defendants have answered in the

14   affirmative.

15       Now, do you understand that by pleading guilty today, you

16   are giving up your right to a speedy trial before a jury?

17           THE DEFENDANT:  Yes.

18           THE DEFENDANT:  Yes, ma'am.

19           THE DEFENDANT:  Yes, ma'am.

20           THE DEFENDANT:  Yes, Your Honor.

21           THE DEFENDANT:  Yes.

22           THE DEFENDANT:  Yes.

23           THE DEFENDANT:  Yes.

24           THE COURT:  All defendants have answered in the

25   affirmative.

Captured and Transcribed by Computer - Eclipse

```
 1        And at a trial, you would be presumed to be innocent and

 2   could not be found guilty by a jury unless your guilt is proven

 3   beyond a reasonable doubt.

 4        Do you understand that?

 5             THE DEFENDANT:  Yes.

 6             THE DEFENDANT:  Yes, ma'am.

 7             THE DEFENDANT:  Yes, ma'am.

 8             THE DEFENDANT:  Yes, Your Honor.

 9             THE DEFENDANT:  Yes.

10             THE DEFENDANT:  Yes.

11             THE DEFENDANT:  Yes.

12             THE COURT:  All defendants have answered in the

13   affirmative.

14        And at a trial, the Government would be required to present

15   witnesses against you in open court and your attorney would be

16   permitted to ask them questions.

17        Do you understand that?

18             THE DEFENDANT:  Yes.

19             THE DEFENDANT:  Yes, ma'am.

20             THE DEFENDANT:  Yes, ma'am.

21             THE DEFENDANT:  Yes, Your Honor.

22             THE DEFENDANT:  Yes.

23             THE DEFENDANT:  Yes.

24             THE DEFENDANT:  Yes.

25             THE COURT:  All defendants have answered in the
```

Captured and Transcribed by Computer - Eclipse

1    affirmative.

2         And you would also be able to present witnesses on your own

3    behalf so that your attorney could ask them questions.

4         Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE DEFENDANT:  Yes, ma'am.

7              THE DEFENDANT:  Yes, ma'am.

8              THE DEFENDANT:  Yes, Your Honor.

9              THE DEFENDANT:  Yes.

10             THE DEFENDANT:  Yes.

11             THE DEFENDANT:  Yes.

12             THE COURT:  How about you?

13             THE DEFENDANT:  Yes.

14             THE COURT:  All right.  Thank you.  All defendants have

15   answered in the affirmative.

16        If the witnesses you wanted to present on your behalf didn't

17   want to come to court to voluntarily testify, they could be

18   forced to come.

19        Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE DEFENDANT:  Yes, ma'am.

22             THE DEFENDANT:  Yes, ma'am.

23             THE DEFENDANT:  Yes, ma'am.

24             THE DEFENDANT:  Yes.

25             THE DEFENDANT:  Yes.

1           THE DEFENDANT:  Yes.

2           THE COURT:  All defendants have answered in the

3   affirmative.

4       And at a trial, you could also testify on your own behalf if

5   you wanted to, but you could not be forced to do so against your

6   wishes.

7       Do you understand that?

8           THE DEFENDANT:  Yes.

9           THE DEFENDANT:  Yes, ma'am.

10          THE DEFENDANT:  Yes, ma'am.

11          THE DEFENDANT:  Yes, ma'am.

12          THE DEFENDANT:  Yes.

13          THE DEFENDANT:  Yes.

14          THE DEFENDANT:  Yes.

15          THE COURT:  All defendants have answered in the

16  affirmative.

17      And should you decide not to testify, the jury would be

18  instructed that they should not hold that as any kind of

19  evidence or circumstance against you.

20      Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE DEFENDANT:  Yes, ma'am.

23          THE DEFENDANT:  Yes, ma'am.

24          THE DEFENDANT:  Yes, ma'am.

25          THE DEFENDANT:  Yes.

1          THE DEFENDANT:  Yes.

2          THE DEFENDANT:  Yes.

3          THE COURT:  All defendants have answered in the

4     affirmative.

5        All right.  Then by pleading guilty you give up all these

6     rights that I have just told you about and that are included in

7     the documents that you signed, if, in fact, you signed

8     documents.

9        Do you understand that?

10         THE DEFENDANT:  Yes.

11         THE DEFENDANT:  Yes, ma'am.

12         THE DEFENDANT:  Yes, ma'am.

13         THE DEFENDANT:  Yes, ma'am.

14         THE DEFENDANT:  Yes.

15         THE DEFENDANT:  Yes.

16         THE DEFENDANT:  Yes.

17         THE COURT:  All defendants have answered in the

18    affirmative.

19       (At this time The Court asked specific questions of the

20       other defendants at which time the following occurred:)

21         THE COURT:  In Cause No. 00-317, would the Government

22    recite what the witnesses would testify if called to trial?

23         AUSA ESQUIVEL:  Yes, Your Honor.  The facts would show

24    that on or about July 5th, 2000, a Harlingen Police Department

25    Officer conducted a traffic stop on a Dodge truck that the

Captured and Transcribed by Computer - Eclipse

```
 1    Defendant was driving.  After a consent to search was obtained

 2    from the Defendant, the Officer searched the truck.  The Officer

 3    found approximately 163.7 grams of cocaine under the driver's

 4    seat.  After a pat-down search of the Defendant, 134.5 grams of

 5    cocaine were found on his person.  After being Mirandised, the

 6    defendant admitted to being possessor of approximately

 7    297.7 grams of cocaine.

 8         THE COURT:  Mr. Rangel, is there anything about that

 9    version of the testimony that you disagree with?

10         THE DEFENDANT:  No, ma'am.

11         THE COURT:  Anything you wish to add?

12         THE DEFENDANT:  No, ma'am.

13         THE COURT:  Then knowing and understanding the charges

14    in Count Two of this indictment, and having conferred with your

15    attorney and having received his advice and counsel, and knowing

16    the maximum penalty that can imposed and other consequences of a

17    guilty plea, and knowing of your right to a trial and the rights

18    associated with a trial, and knowing how the sentence will be

19    determined, how do you wish to plead to Count Two of this

20    indictment, guilty or not guilty?

21         THE DEFENDANT:  Guilty.

22         THE COURT:  Are you pleading guilty freely and

23    voluntarily?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  Has anyone exerted any force or pressure on
```

1    you in order to get you to plead guilty?

2           THE DEFENDANT:  No, ma'am.

3           THE COURT:  Then Am i correct in believing that the

4    reason you're pleading guilty is because what the government

5    just recited as the evidence is, in fact, true?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  Mr. Valle, any questions you wish for me to

8    ask your client?

9           MR. VALLE:  No.

10          THE COURT:  As far as you understand, have I complied

11   with all the requirements of Rule 11 for the taking of a guilty

12   plea?

13          MR. VALLE:  Yes, ma'am.

14          THE COURT:  All right.  Same questions for the

15   Government, Mr. Esquivel?

16          AUSA ESQUIVEL:  No questions, Your Honor, and yes, you

17   have complied, Your Honor.

18          THE COURT:  All right then.  In Cause No. 00-CR-317, I

19   find that the Defendant, Luis Javier Rangel, is fully competent

20   and capable of entering an informed plea, that he is aware of

21   the nature of the charges and the consequences of his plea and

22   that his plea of guilty is a knowing and voluntary plea

23   supported by an independent basis in fact containing each of the

24   essential elements of the offense charged in Count Two of this

25   . indictment.  Therefore, I find that he is guilty of possession

1    with intent to distribute a quantity less than 500 grams, that

2    is, approximately 297.7 grams, gross weight of cocaine as

3    alleged in Count Two of this indictment.

4        All right.  This matter's going to be set for a presentence

5    report and the sentencing hearing is scheduled for January

6    the 16th, 2001.

7        We're in recess.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    UNITED STATES DISTRICT COURT        *

2

     SOUTHERN DISTRICT OF TEXAS          *
3

4         I, BRECK C. RECORD, Official Court Reporter, United States

5    District Court, Southern District of Texas, do hereby certify

6    that the foregoing is a correct transcript from the record of

7    proceedings in the above-entitled matter.

8         I certify that the transcript fees and format comply with

9    those prescribed by the Court and Judicial Conference of the

10   United States.

11

12   _10/18/01_                    _Breck Record_____

                                   BRECK C. RECORD,
13                                 Official Court Reporter
                                   United States District Court
14                                 Southern District of Texas

15

16

17

18

19

20

21

22

23

24

25


                  Captured and Transcribed by Computer - Eclipse

1    UNITED STATES DISTRICT COURT        *

2

    SOUTHERN DISTRICT OF TEXAS          *

3

4        I, BRECK C. RECORD, Official Court Reporter, United States

5    District Court, Southern District of Texas, do hereby certify

6    that the foregoing is a correct transcript from the record of

7    proceedings in the above-entitled matter.

8        I certify that the transcript fees and format comply with

9    those prescribed by the Court and Judicial Conference of the

10   United States.

11

12   _10/18/01_                    _Breck Record_

13                                 BRECK C. RECORD,
                                   Official Court Reporter
                                   United States District Court
14                                 Southern District of Texas

15

16

17

18

19

20

21

22

23

24

25


                Captured and Transcribed by Computer - Eclipse

**EXHIBIT D - SENTENCING**

1              IN THE UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
2                  BROWNSVILLE DIVISION

3    _____
                                    )
4    UNITED STATES OF AMERICA       )
                                    )  CRIMINAL ACTION NO.
5    VS.                            )  B-00-317
                                    )
6    LUIS JAVIER RANGEL             )
     _____)
7

8

9                   SENTENCING PROCEEDINGS
           BEFORE THE HONORABLE HILDA G. TAGLE
10                   JANUARY 16, 2001

11   APPEARANCES:

12   For the Government:       MR. JOSE "JOE" ESQUIVEL
                               Assistant United States Attorney
13                             Brownsville, Texas

14   For the Defendant:        MR. JOE VALLE
                               Attorney at Law
15                             Brownsville, Texas

16   Transcribed by:           BRECK C. RECORD
                               Official Court Reporter
17                             600 E. Harrison, Box 16
                               Brownsville, Texas  78520
18                             (956)548-2510

19

20

21

22

23

24

25


              Captured and Transcribed by Computer - Eclipse

```
 1            THE COURT:  00-CR-317-01, the United States of America
 2   versus Luis Javier Rangel.  What says the Government?
 3            AUSA ESQUIVEL:  Joe Esquivel for the Government.  Ready,
 4   Your Honor.
 5            THE COURT:  What says the Defendant?
 6            MR. VALLE:  Joe Valle for Mr. Rangel, Your Honor.  We're
 7   ready.  There is an objection.
 8            THE COURT:  All right then.  Luis Javier Rangel.  Is
 9   there any -- have you reviewed the presentence report with your
10   client?
11            MR. VALLE:  Yes, Your Honor.
12            THE COURT:  And are there any objections to the contents
13   of the presentence report?
14            MR. VALLE:  Yes, Your Honor.  We objected to
15   Paragraph 16 of the report and my client revealed to the
16   probation officer that he had been involved in two previous
17   transactions.  I spoke to my client about this and he tells me
18   that he did buy more cocaine for his own use.  He does have a
19   habit of using about an "eight ball" a day.  He was trying to be
20   honest with the probation officer; so, we object to that.  We
21   ask that Your Honor consider paragraph 60 whereby the Defendant
22   would be sentenced to the original agreement which would put him
23   at level 17, criminal history category two, which is 27 to 33
24   months.  We ask that Your Honor consider the bottom end of the
25   guideline and that he also be recommended to drug rehabilitation
```

Captured and Transcribed by Computer - Eclipse

1    in the federal penitentiary, Your Honor.

2             THE COURT:  How much is 297.7 grams?

3             PROBATION OFFICER:  I respectfully refer to the

4    probation officer.  She's here in court.

5             PROBATION OFFICER:  Excuse me, Your Honor?

6             THE COURT:  I was wondering about the 297.7, since this

7    figure has shown on Paragraph 16, but it is also shown to be

8    referred to in -- that the amount seized at the time of his

9    arrest.

10             PROBATION OFFICER:  That's correct.  That was the

11    297.7 grams.  However, during a conversation of the presentence

12    interview with the Defendant, he did reveal to me that he had

13    made two previous similar transactions to that one within the

14    past six months and so that's why he got the enhancement.  We

15    included that as per relevant conduct.

16             THE COURT:  Okay.  But my question is the figure of

17    297.7, how much is that?  Translate that to me in the English

18    system.

19             PROBATION OFFICER:  It's less than a pound.  It is not

20    very much.

21             THE COURT:  Well, I mean, if this is for personal use, a

22    pound of this kind of drug or cocaine would be --

23             PROBATION OFFICER:  He did reveal that he was using some

24    of the cocaine himself and he was also selling to support his

25    habit.  The investigators in the case did find selling

Captured and Transcribed by Computer - Eclipse

1    paraphernalia, little baggies, little Ziplock baggies indicating

2    the Defendant was also selling.  So, even though it was also for

3    his personal use because he does have quite a lengthy substance

4    abuse history, he was also selling and he did admit that much.

5            THE COURT:  Well, can somebody --

6            MR. VALLE:  About half a pound, Your Honor.  The 297.

7            THE COURT:  Well, I mean, when you characterize it as

8    personal use, I was thinking, you know, a small quantity for

9    himself, but that's -- to me that's the presumption there of

10   intent to distribute.

11           MR. VALLE:  Well, he admits to doing half that amount,

12   not that -- which would be about 150, which would be about a

13   fourth of a pound.

14           THE COURT:  When you say he admits to --

15           MR. VALLE:  To -- the probation officer is telling us

16   that it is half a pound that he talks about in the interview --

17   or about a pound, 297 grams, I guess.  But he tells me that it

18   is about half that amount, which would be about half a pound or

19   would be one-fourth of a pound - 150 grams versus the 296.

20           THE COURT:  Well, a fourth of a pound is four ounces.

21           PROBATION OFFICER:  He admitted to using about an "eight

22   ball" a day, which I believe is --

23           MR. VALLE:  Eighth of an ounce.

24           PROBATION OFFICER:  -- eighth of an ounce.  So, he was

25   consuming it.


        Captured and Transcribed by Computer - Eclipse

1           THE COURT:  Yeah, but an eighth of an ounce is -- you're

2     talking about one-fourth of an ounce, then that's two.  No, no,

3     no, we're talking about four ounces.  A fourth of a pound is

4     four ounces.  So, out of that, you take an eighth of an ounce.

5     That's a large number.  So, I mean I think what you're saying is

6     that -- or I got the impression when you first started, you were

7     saying he might have bought some, but it was only for personal

8     use.  Well, seems to me that even if it was a fourth of a pound,

9     four ounces, that is still a lot for it to be constituting

10    personal use, especially in the six-month period before his

11    arrest.

12          MR. VALLE:  That would be about eight.  You could use --

13    I think if one-eighth -- if they're using about an eighth that

14    would be about eight times that you could use or eight uses that

15    you could get out of four ounces.

16          THE COURT:  Multiply eight --

17          MR. VALLE:  Okay.

18          THE COURT:  One-eighth of an ounce, that means eight per

19    ounce is 32.

20          MR. VALLE:  I'm sorry.

21          THE COURT:  Anyway, was there something else?

22          PROBATION OFFICER:  I'm sorry?

23          THE COURT:  Is it the writer or --

24          PROBATION OFFICER:  Yes, Your Honor.  I was just going

25    to show the measurement.  453 -- or .453 grams is a pound; so, I

Captured and Transcribed by Computer - Eclipse

1    would say it was about two-thirds of a pound.  I apologize.

2         MR. VALLE:  Another thing that I wanted to bring to The

3    Court's attention is the prosecutor has nothing about this

4    purchasing of these two other amounts of cocaine in this case,

5    and that he wanted to be honest with the probation officer, let

6    her know that he does have a drug problem.

7         THE COURT:  Does he have any state charges pending?

8         MR. VALLE:  Yes, Your Honor, he does.  Out of this same

9    case is pending in state court.  State is pursuing the same

10    case.  And I think he's going to be habitualized over there

11    because he does have two previous convictions.

12         THE COURT:  I'm going to overrule your objection, Mr.

13    Valle.

14    Anything else?

15         MR. VALLE:  No, Your Honor.

16         THE COURT:  Sir, is there anything you wish to say to

17    The Court before you're sentenced?

18         THE DEFENDANT:  No, ma'am.

19         THE COURT:  Very well then.  Pursuant to the Sentencing

20    Reform Act of 1984, you are hereby sentenced to a term of

21    imprisonment of 63 months.  Upon lease from imprisonment, you

22    shall be placed on supervised release for a term of three years.

23    During this period of supervised release, you shall comply with

24    all standard and mandatory conditions of supervised release

25    which shall included that you are not to possess a firearm or

Captured and Transcribed by Computer - Eclipse

1    destructive device, shall not commit another federal, state or

2    local crime, and shall participate in a program, inpatient or

3    outpatient, for the treat of drug and/or alcohol addiction,

4    dependency or abuse.  You will be required to perform 200 hours

5    of community service to be completed within the first two years

6    of supervision and furthermore The Court finds that you do not

7    have an ability to pay a fine and therefore waives the

8    imposition of a fine; however, The Court does impose a special

9    assessment of $100.

10       Sir, this sentence is in conformance with the Sentencing

11   Reform Act of 1984 and as justification for this sentence, The

12   Court adopts the findings in the report.

13       The law does provide that you have a right to appeal your

14   sentence and you can do so even though you are indigent, but you

15   must give notice that have intention within 10 days.

16       Anything further?

17           MR. VALLE:  No, Your Honor.

18           AUSA ESQUIVEL:  Government moves to dismiss remaining

19   count, Your Honor.

20           THE COURT:  Motion's granted.

21

22

23

24

25


Captured and Transcribed by Computer - Eclipse

1    UNITED STATES DISTRICT COURT          *

2

     SOUTHERN DISTRICT OF TEXAS            *

3

4        I, BRECK C. RECORD, Official Court Reporter, United States

5    District Court, Southern District of Texas, do hereby certify

6    that the foregoing is a correct transcript from the record of

7    proceedings in the above-entitled matter.

8        I certify that the transcript fees and format comply with

9    those prescribed by the Court and Judicial Conference of the

10   United States.

11

12   _10/18/01_                    _Breck Record_____
                                   BRECK C. RECORD,
13                                 Official Court Reporter
                                   United States District Court
14                                 Southern District of Texas

15

16

17

18

19

20

21

22

23

24

25

                 Captured and Transcribed by Computer - Eclipse

**EXHIBIT E-** *PRO SE* § 2255 **MOTION**

AO 243 (Rev. 5/85)

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District _Southern District of texas_ |
|---|---|

| Name of Movant _Luis Javier Rangel_ | Prisoner No. _94214-079_ | Case No. _1:00 CR00 317-001_ |
|---|---|---|

Place of Confinement
_THREE RIVERS FCI, THREE RIVERS, TX_

UNITED STATES OF AMERICA          V.

(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack _U.S. District Court for the Southern Dist. of texas - Brownsville Div._

2. Date of judgment of conviction _Jan. 16, 2001_

3. Length of sentence _63 Months_

4. Nature of offense involved (all counts) _Possession With intent to Distribute a quantity less than 500 grams of cocaine, in violation of 21 USC §§ 841(a)(1), 841(b)(1)(c), and 18 USC § 2._

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☑
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   _n/a_

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐    _n/a_

7. Did you testify at the trial?
   Yes ☐ No ☑

8. Did you appeal from the judgment of conviction?
   Yes ☐ No ☑

(2)

AO 243 (Rev. 5/85)

9.  If you did appeal, answer the following:

    (a) Name of court _____ *n/a* _____

    (b) Result _____

    (c) Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☒

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court _____ *n/a* _____

       (2) Nature of proceeding _____

       _____

       (3) Grounds raised _____

       _____

       _____

       _____

       _____

       _____

       (4) Did you receive an evidentiary hearing on your petition, application or motion?
       Yes ☐ No ☐

       (5) Result _____ *n/a* _____

       (6) Date of result _____

    (b) As to any second petition, application or motion give the same information:

       (1) Name of court _____ *n/a* _____

       (2) Nature of proceeding _____

       _____

       (3) Grounds raised _____

       _____

       _____

       _____

       _____

AO 243 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result_____ n/a

(6) Date of result _____ n/a

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.        Yes ☐ No ☑
(2) Second petition, etc.     Yes ☐ No ☑

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

I failed to meet dead line on
Direct appeal because of lack of
legal assistance

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.
Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.
(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 5/85)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: Facts in PSI were altered to where it raised guide lines from 20 to 26 points

Supporting FACTS (state *briefly* without citing cases or law) _____

PSI claims defendant made two previous transactions when in reality there was only one.

_____
_____

B. Ground two: Denial of Effective Assistance of Counsel

Supporting FACTS (state *briefly* without citing cases or law): (1) Attorney was not present when PSI was given to defendant (2) PSI was obtained a day before Sentencing (3) Attorney never discussed PSI with defendant prior to Sentencing.

C. Ground three: Conviction obtained by use of evidence gained pursuant to an unconsti-

Supporting FACTS (state *briefly* without citing cases or law): tutional search and seizure.

_____
_____
_____
_____

AO 243 (Rev. 5/85)

D. Ground four: *Conviction obtained by use of evidence obtained pursuant to an unlawful arrest*

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

_____ *n/a* _____

_____

_____

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐ No ☑

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing *Court Appointed Attorney - Cannot recall his name*

(b) At arraignment and plea *Joe Valle, 1120 East 10th street, Brownsville, tx 78520*

(c) At trial *n/a*

(d) At sentencing *Same as "b" Section above*

AO 243 (Rev. 5/85)

(e) On appeal _____ *n/a*

(f) In any post-conviction proceeding _____ *n/a*

(g) On appeal from any adverse ruling in a post-conviction proceeding _____ *n/a*

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐ No ☑

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☑ No ☐

(a) If so, give name and location of court which imposed sentence to be served in the future: _____
*Cameron County, District Court Brownsville, Texas*

(b) Give date and length of the above sentence: *Sentenced on March 7, 2001 - 12 years to run Concurrent with Present federal sentence*

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

*1-14-02*
(date)

_____
Signature of Movant

(7)

**EXHIBIT F- NOTICE OF DISMISSAL**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

APR 2 3 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

2200

LUIS JAVIER RANGEL          *
                            *
        VS                  * C.A. NO. B-02-010
                            *
UNITED STATES OF AMERICA     * (CR. NO. B-00-317)

NOTICE OF DISMISSAL
FOR LACK OF PROSECUTION

On April 23, 2002, the Court reviewed the case file in the above-captioned matter, and it appears that on January 15, 2002, an application to proceed in forma pauperis was mailed to the Petitioner. The Petitioner has failed to response and has not submitted the application to proceed in forma pauperis.

It is, therefore, ORDERED that this 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be placed on the dismissal docket and dismissed thereafter if no response is received from Petitioner by May 24, 2002.

DONE at Brownsville, Texas, this 23rd day of April 2002.

_____
Felix Recio
United States Magistrate Judge